JDN

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nathan Sterling Mason,<br><br>Plaintiff,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>Defendants. | No. CV 17-08098-PCT-DGC (MHB)<br><br>**ORDER** |

Plaintiff Nathan Sterling Mason, who is confined in the Arizona State Prison Complex-Lewis, Buckley Unit, brought this pro se civil rights action under 42 U.S.C. § 1983 against Arizona Department of Corrections (ADC) Director Charles L. Ryan; Correctional Officer (CO) Joshua Baese; Corizon, LLC; and Nurse Practitioner Andreas Thude. (Doc. 46.) Before the Court are Plaintiff's Emergency Motion for Preliminary Injunction (Doc. 129), which relates to documents seized from his legal property, and Plaintiff's Amended Motion to Strike (Doc. 152). The Court will deny both Motions, but order Defendants to allow Plaintiff access to the seized documents for review.

**I.  Background**

In his First Amended Complaint, Plaintiff alleged numerous Eighth Amendment claims, including that Ryan adopted a policy that resulted in repeated denials of Plaintiff's protective custody requests and led to his transfers to different yards, which in turn repeatedly placed Plaintiff at risk of harm. (Doc. 46.) Plaintiff further alleged that

he was subjected to a threat to his safety, was attacked by other inmates, and was denied adequate medical care for injuries he suffered in the attack. (*Id.*)

On March 15, 2018, Plaintiff filed his Emergency Motion for Preliminary Injunction, in which he states that in mid-February 2018, he produced copies of documentary evidence to defense counsel as part of discovery and, shortly thereafter, he was subjected to a targeted cell search and ADC officers seized his legal boxes. (Doc. 129 at 2–3.) When officers returned Plaintiff's legal boxes, 18 legal documents had been removed. (*Id.* at 3.) Plaintiff submits that these legal documents were evidence to be used against Defendants in this action. (*Id.*) Plaintiff seeks an order directing Ryan to return Plaintiff's legal documents. (*Id.* at 7.)

In response, Ryan confirms Plaintiff's allegations. Ryan states that on February 9, 2018, CO Wade, as a courtesy to defense counsel, scanned 66 pages of documents provided by Plaintiff as part of discovery, and Wade emailed the documents to defense counsel. (Doc. 142 at 4.) On March 12, 2018, CO Taylor searched Plaintiff's cell and seized two boxes. (*Id.* at 4.) Prison officials seized 18 documents from the boxes—three of these documents are photographs of Plaintiff, and some of the other documents include unredacted pages from Plaintiff's protective custody file (PC file). (*Id.* at 5–6.) Security Operations Administrator Ronald Lee avers that inmates are not allowed to possess these items because photographs can be used to make duplicate identification cards, and PC file documents may pose a threat to the inmate or others if other inmates gain access to the documents. (*Id.*, Ex. B, Lee Decl. ¶¶ 4–5.) The 18 documents identified as unauthorized paperwork were delivered to Lee, who has custody and control of them. (Doc. 142 at 4.)

Ryan opposes Plaintiff's Emergency Motion on the grounds that (1) the Court lacks authority to issue a preliminary injunction because Plaintiff's request for injunctive relief is unrelated to his underlying threat-to-safety claim and (2) Plaintiff has not been denied access to the courts. (*Id.* at 9–13.)

Plaintiff moved to strike some of the statements within the declarations Ryan submitted in support of his opposition to Plaintiff's Emergency Motion. (Doc. 152.)

**II.     Amended Motion to Strike Perjury Statements**

Plaintiff moves to strike Wade's declaration statement that he was required to issue a disciplinary ticket to Plaintiff following a telephone call with defense counsel on the ground that there is no policy that supported issuance of a ticket. (*Id.* at 2–3.) Plaintiff moves to strike Lee's declaration statement regarding the source of certain documents on the ground that it is hearsay. (*Id.* at 3–4.)

Wade's declaration statement is irrelevant to the pending request for injunctive relief and is not considered by the Court. Lee's declaration statement is hearsay, but it is also irrelevant and is not considered by the Court. Accordingly, Plaintiff's Motion to Strike these statements will be denied as unnecessary.

**III.    Emergency Motion for Preliminary Injunction**

**A.     Relief Sought Relates to Access to the Court**

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted). Generally, "[w]hen a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015); *see De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945). An exception to this rule arises where the injunctive relief sought is related to court access. *See Prince v. Schriro, et al.*, CV 08-1299-PHX-SRB, 2009 WL 1456648, at *4 (D. Ariz. May 22, 2009) (where the relief sought relates to a prisoner's access to the court, "a nexus between the preliminary relief and the ultimate relief sought is not required" and the court need not consider the merits of the underlying complaint) (citing *Diamontiney v. Borg*, 918 F.2d 793, 796 (9th Cir. 1990)). The constitutional right of access to the courts encompasses a right to litigate without active interference. *See*

*Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011), *overruled on other grounds by Richey v. Dahne*, 807 F.3d 1202, 1209 n.2 (9th Cir. 2015).

Plaintiff asserts that the 18 seized documents are evidence to support his claims in this case. (Doc. 129.) He states that the photographs are of his injury sustained in the attack alleged in his pleading. Plaintiff submits that the photographs show abrasions on his neck and are necessary to refute Defendants' claim that photos taken after the December 2015 altercation did not show any injuries. (Doc. 145 at 6–7 & Ex. A.)[1] Plaintiff explains that the other documents include information that is crucial to proving the knowledge element of his constitutional claim against Ryan and Baese. (Doc. 129 at 2–3.) *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (to support an Eighth Amendment threat-to-safety claim, a plaintiff must show that the defendant knew of the excessive risk to the plaintiff's safety).

Ryan maintains that Plaintiff has not been denied access to the courts because there is no evidence that seizure of documents from his cell has resulted in the inability to "present a claim" and Plaintiff has access to his redacted PC file by making arrangements with CO Wade to view it under supervision. (Doc. 142 at 11.) Ryan asserts that there is a redacted version of each seized document in the redacted PC file. (*Id.* at 5–7.)

Plaintiff notes, however, that some of the seized documents are not part of his PC file. Rather, they were documents he obtained from the Navajo County Attorney during Plaintiff's criminal case. (Doc. 129 at 3; Doc. 145 at 3–4.) And the photographs were not part of his PC file. (Doc. 145 at 3.) There is no indication that Plaintiff will be provided access to the seized documents that are not part of the PC file. (*See* Doc. 142 at 11 (indicating only that Plaintiff will have access to his redacted PC file).) Moreover, Ryan did not provide copies of the unredacted and redacted versions of the PC file

---

[1] Plaintiff proffers a copy of Defendants' response to request for admissions, in which Defendants assert that photos taken show no abrasions on Plaintiff's neck, but when Plaintiff reviewed his redacted PC file, there were no photographs, and it appears that Defendants have not produced the photos referenced in their response to request for admissions. (Doc. 145, Exs. A and B, Pl. Decl. ¶ 3.)

- 4 -

documents that were seized, so there is no way to ascertain whether the redacted versions retain the evidentiary material Plaintiff seeks to support his claim. If the information in the seized documents indeed shows or supports an inference that Ryan and Baese knew of an excessive risk to Plaintiff's safety, withholding the documents or portions of them from Plaintiff would interfere with his ability to litigate his Eighth Amendment claim. Contrary to Ryan's suggestion, the right to litigate without active interference is not limited to presenting a claim; it extends beyond the pleading stage and includes the right to litigate a claim to conclusion without undue interference. *Silva*, 658 F.3d at 1103. Because Plaintiff has shown that this right may be implicated, the relief sought relates to Plaintiff's access to the courts and his Emergency Motion will be addressed. *See Zilich v. Lucht*, 981 F.2d 694, 695 (3d Cir. 1992) ("[m]any courts have found a cause of action for violation of the right of access stated where it was alleged that prison officials confiscated and/or destroyed legal materials") (citing cases).

### B. Constitutional Rights Balanced Against Security Concerns

A prisoner has no legitimate expectation of privacy, and the Fourth Amendment's prohibition on unreasonable searches does not apply in a prison cell. *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). "The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions." *Id.* at 526. But under the Eighth Amendment, prisoners are protected from searches conducted only for "calculated harassment unrelated to prison needs." *Id.* at 530. And, as mentioned, prisoners' constitutional right of access to the courts includes a right to litigate without active interference. *See Silva*, 658 F.3d at 1102.

Actions that allegedly infringe on prisoners' constitutional rights are valid if they are reasonably related to legitimate penological interests. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). Maintaining prison security and preserving internal order are essential goals that may require limiting prisoners' constitutional rights. *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). Courts must defer to prison officials' expert judgments in

adopting practices needed to maintain security and address problems that arise in the day-to-day operations of a prison. *Id.* at 547.

Ryan asserts that an inmate's PC file contains sensitive information, such as names of other inmates, information about other inmates, and the identity of security threat groups. (Doc. 142, Ex. 2, Lee Decl. ¶ 5.) Ryan states that if other inmates gain access to this information, it poses a threat to the inmate and others who are named in the PC file. (*Id.*) Ryan further asserts that inmates are not permitted to have photographs of themselves because the photos can be used to make duplicate identification cards, which can be used to escape. (*Id.*) According to Ryan, the ADC has determined that the 18 documents seized from Plaintiff's cell constitute contraband documents and pose a security threat, which necessitated the seizure. (Doc. 142 at 11–12.) Ryan notes, however, that the seized photographs and documents have not been destroyed and are retained by the Security Operations Administrator. (*Id.* at 11.)

The fact that Plaintiff has had these documents in his possession for three years without incident somewhat undercuts Ryan's contention that the documents represent a threat to the safety and security of the prison. (Doc. 129 at 6; Doc. 145 at 5.) Also, Plaintiff states that the pictures are of his neck, not his face, and could not be used to make identification cards. (Doc. 145 at 5.) Ryan did not proffer copies of the seized photographs to show that they in fact could be used for that purpose. Nonetheless, Ryan's security concerns are not completely unfounded, and, in this case, it is not necessary to grant the requested relief to protect Plaintiff's right of access to the court. Plaintiff's Emergency Motion seeking an order for Ryan to return the seized documents will be denied. But Ryan will be directed to allow Plaintiff access to all 18 seized documents—in unredacted form—for his review pursuant to arrangements made with CO Wade or other appropriate officer.

### C. Redaction of Documents

In his Response to Plaintiff's Motion, Ryan refers to redactions made to the PC file that is available for Plaintiff's review under supervision. (Doc. 142 at 2–3.) The

redacted information includes the names of inmates on Plaintiff's Do-Not-House-With list and information about an inmate related to Plaintiff, whom Plaintiff identifies as his brother. (*Id.*; Doc. 145 at 2.)  Plaintiff states that his brother was released from prison over a year ago and that the threat to Plaintiff's life in prison is related to actions of his brother. (Doc. 145 at 2.)  The names of prisoners on Plaintiff's Do-Not-House-With list are relevant to his threat-to-safety claim, and Plaintiff should already be aware of the names on that list.  Also, Plaintiff is aware of his brother and his brother's actions which Plaintiff claims contribute to the risk of harm to his safety.  Thus, the redactions identified by Ryan are not necessary.

Defendants Ryan and Baese previously asserted that information redacted from Plaintiff's PC file will not prevent Plaintiff from pursuing his case, that the information redacted would be a threat to his safety, and that no factual or pertinent information has been hidden.  (Doc. 84 at 2; Doc. 85 at 4.)  In light of the improper redactions just identified, Defendants' conclusory assertions raise serious concerns.  As one district court in this circuit has noted:

> Redaction is, after all, an alteration of potential evidence.  The Federal Rules sanction only very limited unilateral redaction, see Fed. R. Civ. P. 5.2.  Outside of these limited circumstances, a party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case.

*Evon v. Law Offices of Sidney Mickell*, No. S-090760 JAM, GGH, 2010 WL 455476, at *2 n.1 (E.D. Cal. Feb. 3, 2010).  The practice of unilateral redaction "frequently gives rise to suspicion that relevant material harmful to the producing party has been obscured" and "tends to make documents confusing or difficult to use." *In re Medeva Sec. Litig.*, No. 93-4376-KN AJWX, 1995 WL 943468, at *3 (C.D. Cal. May 30, 1995).  Even the redaction of irrelevant information deprives the opposing party of context for the relevant information. *See Bartholomew v. Avalon Capital Grp.*, 278 F.R.D. 411, 451 (D. Minn. 2011).

The Court anticipates summary judgment motions will be filed in this action. (*See* Doc. 43 (Order setting June 8, 2018 dispositive motion deadline).) In an effort to forestall delays due to evidentiary issues, Defendants are reminded that to the extent they rely on any of the PC file documents in support of a summary judgment motion, they will be required to submit unredacted copies of those documents. *See* Fed. R. Civ. P. 56(c)(1)(A); *Live Nation Merch., Inc. v. Miller*, No. 13-cv-03936 CW (NC), 2014 WL 1877912, at *3 (N.D. Cal. May 9, 2014) (noting the "delays and burden imposed on the Court and the litigants by the practice of unilateral redaction"). Further, Plaintiff must be permitted to view unredacted copies of any documents on which Defendants rely in support of summary judgment. If necessary, documentary evidence may be filed under seal (*see* LRCiv. 5.6), and arrangements may be made for Plaintiff to review the documents without keeping copies in his cell.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Plaintiff's Emergency Motion for Preliminary Injunction (Doc. 129) and Plaintiff's Motion to Strike (Doc. 152).

(2) Plaintiff's Emergency Motion for Preliminary Injunction (Doc. 129) is **denied**.

(3) Plaintiff's Motion to Strike (Doc. 152) is **denied**.

(4) Defendants must provide Plaintiff access to the 18 seized documents—in unredacted form—for his review pursuant to arrangements made with CO Wade or other appropriate officer.

Dated this 19th day of April, 2018.

_____
David G. Campbell
United States District Judge