**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nathan Sterling Mason,<br><br>Plaintiff,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>Defendants. | No. CV 17-08098-PCT-DGC (MHB)<br><br>**ORDER** |

Before the Court is Plaintiff Nathan Sterling Mason's Motion for Preliminary Injunction, which requests that the Court order Defendants—Corizon, LLC and Nurse Practitioner Andreas Thude—to provide specialist recommended treatment and medication. (Doc. 73.) On April 10, 2018, the Court issued an Order directing the parties to file supplemental briefing with documentary evidence indicating Plaintiff's current course of treatment and his present condition. (Doc. 156.) The Court will grant the Motion for Preliminary Injunction in part.

**I.     Background Summary**

A detailed factual background is set forth in the Court's April 10, 2018 Order. (Doc. 156 at 4–8.) In brief, Plaintiff has suffered chronic neck pain since early 2016, and a December 2016 MRI showed severe narrowing of the spinal canal and likely early myelomalacia (softening of the spinal cord). (*Id.* at 4.) In January 2017, Plaintiff saw orthopedic specialist Dr. Waldrip, who diagnosed spinal stenosis and informed Plaintiff that he had to fail a full course of pain management therapy before Dr. Waldrip could

perform surgery. (*Id.* at 4.) Dr. Waldrip's treatment plan was to schedule cervical epidural injections with a pain management specialist. (*Id.*) On March 2017, Plaintiff saw a pain management specialist, Dr. Brian Page, who noted severe neck, arm, and shoulder pain and cervical radiculopathy, and he diagnosed cervical disc bulge. (*Id.* at 5.)[1] Dr. Page recommended a series of three epidural steroid injections and prescribed Ultram (brand name for Tramadol) to be taken twice a day for pain. (*Id.*) Dr. Page performed the first steroid injection at the March 2017 appointment, and directed that the second injection should be given four weeks later. (*Id.*) Dr. Page informed Plaintiff that the efficacy of the steroid injections would not be known until after a course of three injections was completed. (*Id.* at 6.)

Plaintiff did not receive the Ultram medication. Defendant Thude discontinued the prescription for Ultram and instead prescribed duloxetine (Cymbalta), which is a selective serotonin/norepinephrine reuptake inhibitor used to treat depression and mood disorders. (*Id.* at 6–7.) Thude submitted a consult request for the second epidural steroid injection, but this request was denied and Plaintiff did not receive any further steroid injections from Dr. Page. (*Id.* at 6.) In June 2017, Plaintiff saw Dr. Waldrip, who performed a corticosteroid injection. (*Id.* at 7.) Thereafter, Plaintiff refused to take any more antidepressant/psychiatric medications due to their ineffectiveness for pain and the side effects, and he filed numerous requests to receive the medication and treatment prescribed by Dr. Page, to no avail. (*Id.* at 7–8.) On December 1, 2017, Plaintiff filed his pending Motion for Preliminary Injunction seeking the specific treatment prescribed by Dr. Page. (Doc. 73.)

**II. Preliminary Injunction**

As set forth in its prior Order, to warrant a preliminary injunction, Plaintiff must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable

---

[1] Cervical radiculopathy is a syndrome of pain and/or sensorimotor deficits due to compression of a cervical nerve root. *See U.S. National Library of Medicine, National Institutes of Health Cervical Radiculopathy: A Review*, https://ww.ncbi.nlm.nih.gov/pmc/articles/PMC3192889/ (last visited May 1, 2018).

harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). If Plaintiff can show that there are "serious questions going to the merits," which is a lesser showing than likelihood of success on the merits, then a preliminary injunction may still issue if he can show that the balance of hardships tips sharply in his favor and he satisfies the two other *Winter* factors. *Shell Offshore, Inc. v. Greenpeace, Inc*., 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

In its April 10, 2018 Order, the Court determined that Plaintiff had a serious medical need and showed serious questions whether Defendants' failure to provide the treatment and medication prescribed by the pain management specialist was medically unacceptable. (Doc. 156 at 13.) Thus, Plaintiff satisfied the first *Winter* factor. (*Id.*) But because Plaintiff's Motion for Preliminary Injunction was filed in December 2017, the Court was unable to determine whether, at the present time, there is an ongoing harm or threat of irreparable injury sufficient to support injunctive relief. (*Id.* at 14–15.) Nor was it clear what treatment Defendants are currently providing in response to Plaintiff's serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 845–46 (1994) (a defendant's current conduct determines whether injunctive relief is warranted). The Court directed the parties to file evidence of Plaintiff's current treatment and medication regimen and Plaintiff's current condition. (Doc. 156 at 15.) The parties have filed their supplemental briefing.

**III. Supplemental Facts**

Plaintiff avers that since December 2017, his condition and pain symptoms have dramatically worsened and he suffers pain every day. (Doc. 169, Pl. Decl. ¶ 2.) He states that he cannot lay on his left or right side or his back due to the extreme pain, and, consequently, he is in a constant state of sleep deprivation. (*Id.* ¶ 3.)

Plaintiff believes that on January 31, 2018, he suffered a cardiac incident due to severe sleep deprivation and anxiety caused by extreme pain. (*Id.* ¶ 7.) Plaintiff blacked

1  out, and officers initiated an Incident Command System for a medical emergency. (*Id.*)
2  Plaintiff states that both his hands were completely numb, he was sweating, and his blood
3  pressure was 190/120. (*Id.*) Plaintiff was diagnosed with hypertension and is now
4  prescribed high-blood pressure medication. (*Id.*)

On February 20, 2018, Plaintiff saw Dr. Itoro Elijah in the Buckley medical unit. (Doc. 168-1 at 2.) Plaintiff requested completion of the epidural steroid injections, and he stated that he found some relief from the first injection. (*Id.*) Dr. Elijah noted that Plaintiff had received just one injection in the past, so Dr. Elijah documented that she would request two additional injections for completion of the original series of three and she would re-order a consult. (*Id.*) But Dr. Elijah's request for a consult and additional epidural steroid injections was denied. (Doc. 168 at 1–2.) Plaintiff avers that Dr. Elijah resubmitted the request for epidural injections again, and it was denied again. (Doc. 169, Pl. Decl. ¶ 8.)

On March 26, 2018, Plaintiff saw Dr. Elijah. (Doc. 168-1 at 7.) The medical note for this encounter documented that there is an Alternative Treatment Plan because "the patient did not receive any relief from previous injection it does not make sense to do this again." (*Id.*) The note further stated that since Plaintiff's pain is getting worse, a CT scan with contrast was suggested. (*Id.*) The "Plan Notes" indicate that a CT scan will be ordered and there will be follow-up pending results of the CT scan. (*Id.* at 9.) Plaintiff avers that Dr. Elijah offered him two more psychiatric drugs for his pain, but he told her he would not take any more psychiatric medications. (Doc. 169, Pl. Decl. ¶ 8.) Plaintiff states that Dr. Elijah informed him she requested a CT scan. (*Id.*) On April 10, 2018, a nurse reordered Ibuprofen for Plaintiff. (Doc. 168-1 at 12–14.)

**IV.  Discussion**

    **A.  Irreparable Injury**

Plaintiff must demonstrate that, without an injunction, he will be exposed to irreparable harm. *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th 1988) (speculative injury is not irreparable injury sufficient for a preliminary injunction);

*see Winter*, 555 U.S. at 22. To support a mandatory preliminary injunction for specific medical treatment, a plaintiff must demonstrate ongoing harm or the present threat of irreparable injury, not a past injury. *See Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931) (an injunction is only appropriate "to prevent existing or presently threatened injuries"); *Caribbean Marine*, 844 F.2d at 674. "[T]here must be a presently existing threat of harm, although injury need not be certain to occur." *Villaneuva v. Sisto*, CIV S-06-2706 LKK EFB P, 2008 WL 4467512, at *3 (E.D. Cal. Oct. 3, 2008) (citing *FDIC v. Garner*, 125 F.3d 1272, 1279–80 (9th Cir. 1997)). Pain can constitute irreparable harm. *See Rodde v. Bonta*, 357 F.3d 988, 999 (9th Cir. 2004) (irreparable harm includes delayed and/or complete lack of necessary treatment, and increased pain); *McNearney v. Wash. Dep't of Corrs.*, No. C11-5930 RBL/KLS, 2012 WL 3545267, at *14 (W.D. Wash. June 15, 2012) (finding a likelihood of irreparable injury where the plaintiff's medical condition predated her incarceration and had not worsened, but the evidence showed that she continued to suffer unnecessary pain due to the defendants' inadequate treatment plan); *Von Collin v. Cnty. of Ventura*, 189 F.R.D. 583, 598 (C.D. Cal. 1989) ("Defendants do not argue that pain and suffering is not irreparable harm, nor could they").

In addition, courts have recognized that the deprivation of a constitutional right is itself sufficient to establish irreparable harm. *See Nelson v. Nat'l Aeronautics & Space Admin*, 530 F.3d 865, 882 (9th Cir. 2008), *rev'd on other grounds*, 562 U.S. 134 (2011) ("[u]nlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm"); *Norsworthy v. Beard*, No. 14-cv-00695-JST, 2015 WL 1500971, at *20 (N.D. Cal. April 2, 2015) (in granting motion for injunction for sex reassignment surgery, stating that "the deprivation of [the prisoner plaintiff's] constitutional rights under the Eighth Amendment is itself sufficient to establish irreparable harm").

Defendants argue that Plaintiff fails to show that he is likely to suffer irreparable harm because, although he complains of unbearable pain, the medical record shows no such complaints since Dr. Waldrip's injection in June 2017. (Doc. 102 at 14.)

In its prior Order, the Court noted Plaintiff's averment that at every single medical appointment he has explained that he suffers chronic pain and cannot sleep or function normally. (Doc. 156 at 10.) The record also shows that Plaintiff has filed numerous grievances complaining of pain, including in November 2017—months after Dr. Waldrip's injection, when he filed a medical Informal Complaint Resolution and medical Inmate Grievance stating that he lives "in extreme pain, daily" and suffers "extreme and chronic pain" as a result of his spinal conditions. (Doc. 103, Pl. Decl. ¶ 35; Doc. 73 at 19–20.) More importantly, the most recent medical records submitted by Defendants document serious and worsening pain. The February 20, 2018 medical record shows that Plaintiff's condition was such that the treating physician requested a consult with the pain management specialist for further epidural steroid injections. (Doc. 168-1 at 2.) And the March 26, 2018 medical record documents that Plaintiff's pain is getting worse. (*Id.* at 7.)

In his supplemental declaration dated April 24, 2018, Plaintiff avers that his pain has become a constant aching, sharp, shooting, stabbing, tingling, and burning pain in his left arm and shoulder and the left side of his neck down to the middle of his back. (Doc. 169, Pl. Decl. ¶ 4.) He further avers that he has constant numbness in his neck, upper back, right thumb, and two right-hand fingers. (*Id.*) Plaintiff explains that he began to develop a hump in his neck and upper back because the extreme pain prevents him from maintaining an erect posture, and he can no longer sit to watch TV or read or write without excruciating pain. (*Id.*) Plaintiff attests that he spends a large portion of every day lying on his stomach with his head facing left and his hands under his chest because sitting or lying in any other position causes unbearable pain in his neck, upper back, and left shoulder and arm. (*Id.* ¶ 5.) Finally, Plaintiff avers that he now has a visible bulge in his neck along his cervical spine, and whenever it is touched or bumped he experiences extreme pain. (*Id.*)

As mentioned, whether injunctive relief is warranted turns on Defendants' current conduct. *See Farmer*, 511 U.S. at 845–46. The record shows that the treating specialist

prescribed Ultram and recommended a series of three epidural steroid injections, and that two treating providers—previously Dr. Thude and recently Dr. Elijah—submitted consult requests for completing the series of epidural injections. (Doc. 102-1 at 76–80; Doc. 102, Ex. B, Thude Decl. ¶13; Doc. 168-1 at 2.) Plaintiff was never provided the prescribed Ultram; the consult requests for further epidural injections have been denied; and the only medication Plaintiff currently receives for pain is Ibuprofen, which he avers is not at all adequate. (Doc. 168-1 at 12–14; Doc. 170, Pl. Decl. ¶ 3.) Plaintiff receives no other treatment for pain, and there is no indication that the suggested CT scan has been performed or scheduled.

On this record, Plaintiff demonstrates more that speculative injury. He has shown that he currently suffers severe and debilitating pain and development of a deformity in response to the pain. As such, the evidence shows a likelihood of irreparable injury from continuing to disregard the pain management specialist's recommended treatment until the conclusion of this lawsuit, assuming Plaintiff were to prevail.

### B. Balance of Hardships

Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quotation omitted). The Ninth Circuit has held that the interest in protecting individuals from physical harm outweighs a government entity's monetary costs. *See Harris v. Bd. of Supervisors, L.A. Cnty.*, 366 F.3d 754, 766 (9th Cir. 2004) ("faced with [ ] a conflict between financial concerns and preventable human suffering, [the court has] little difficulty concluding that the balance of hardships tips decidedly in plaintiff's favor") (quotation omitted).

Defendants argue that the balance of equities does not tip in Plaintiff's favor because he cannot show a likelihood of success on the merits and a possibility of irreparable harm; he seeks additional care that now appears unnecessary; and he has failed to request care through the normal course of submitting an a Health Needs Request (HNR). (Doc. 102 at 15.) These arguments are unavailing. The Court has already

determined that Plaintiff demonstrates serious questions going to the merits and irreparable injury. The care Plaintiff requests does not extend beyond what has been specifically recommended by the treating specialist. And the Court previously addressed and rejected Defendants' argument regarding Plaintiff's failure to continue filing HNRs seeking the same relief. (Doc. 156 at 10–11.)

Defendants further argue that the Court must afford prison administrators "wide-ranging deference" in the adoption of practices that in their judgment are needed to preserve discipline and maintain security, and that these concerns weigh against intervening in prison operations. (Doc. 102 at 14, citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).) The Ninth Circuit has stated, however, that "only rarely will prisoners' medical needs 'genuinely clash' with the security concerns of prison personnel"; thus, deference to prison officials' judgment regarding security concerns is generally absent from medical needs cases. *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1242, 1254 (9th Cir. 2016); *Chess v. Dovey*, 790 F.3d 961, 973 (9th Cir. 2015) ("security considerations are usually not present in medical care cases"). Defendants fail to explain what security concerns would be implicated by providing the recommended medical treatment in this case.

Finally, Defendants have intimated that they intend to provide, at least in part, the relief Plaintiff seeks. In their supplemental brief filed on April 20, 2018, defense counsel asserted that the Corizon Regional Medical Director, Dr. Ayodeji Ladele, was contacted about Plaintiff's medical treatment and that "[u]pon review, he will order an appointment with Dr. Page for further consultation with injection." (Doc. 168 at 2.) An injunction directing Defendants to do something they already intend to do will cause no hardship.

In short, Defendants make no showing of any harm if an injunction issues. Conversely, Plaintiff demonstrates that he is currently suffering serious and worsening pain that greatly affects his daily life, and he is developing a malformation on his neck as a result of his body's response to the pain. The Court finds that the balance of hardships tips sharply in Plaintiff's favor.

### C. Public Interest

"[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quotation omitted). Moreover, "the public has a strong interest in the provision of constitutionally-adequate health care to prisoners." *McNearney*, 2012 WL 3545267, at *16 (quoting *Flynn v. Doyle*, 630 F. Supp. 2d 987, 993 (E.D. Wis. 2009)); *see Farnam v. Walker*, 593 F. Supp. 2d 1000, 1017 (C.D. Ill. 2009) (holding that public had an interest in the maintenance of prisoner's health during the pendency of the lawsuit).

Defendants submit that granting the requested injunctive relief would not be in the public interest because it would require the Court to override decisions of correctional authorities responsible for the safety, security, and efficient operation of the prison. (Doc. 102 at 15.) There is no evidence that Defendants' decisions to deny Plaintiff further epidural steroid injections and to deny him the prescribed Ultram were based on safety or security concerns. Indeed, as the Court discussed in the April 10, 2018 Order, Defendants failed to present any evidence to support their decisions to deny the specialist prescribed treatment and medication. (Doc. 156 at 6 n.11 & at 13.)

The Court finds that it is in the public interest to prevent Plaintiff from suffering ongoing pain during the remainder of this lawsuit. Accordingly, this factor favors a preliminary injunction that requires Defendants to provide specialist recommended treatment and medication.

### D. Narrowly Tailored Relief

As stated in the Court's prior Order, the Prison Litigation Reform Act (PLRA) requires any injunctive relief to be narrowly drawn and the least intrusive means necessary to correct the harm. (Doc. 15 at 3, citing 18 U.S.C. § 3626(a)(2)). Neither party addresses this requirement. Adhering to the specialist's treatment recommendations is the most narrowly drawn relief necessary to correct the harm identified by Plaintiff. Thus, Plaintiff's request for relief satisfies the requirements of the PLRA.

### E. Bond Requirement

Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Despite this mandatory language, "Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (internal quotation omitted). The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct. *Id.*

Here, Defendants have not requested a bond or submitted any evidence regarding likely damages. It is also difficult to envision how Defendants would incur compensable costs or damages. Accordingly, the Court will waive the bond requirement.

## V. Scope of Injunctive Relief

Plaintiff requested an injunction ordering Defendants to provide Dr. Page's prescribed therapy and medication; specifically, the complete series of three epidural steroid injections and the medication Ultram. (Doc. 73 at 5.) Plaintiff has satisfied the *Winter* factors, and his request for relief is narrowly drawn. Thus, he is entitled to injunctive relief. However, since filing his Motion on December 1, 2017, Plaintiff's spinal condition and pain have worsened, and he has been diagnosed with hypertension and is prescribed high-blood pressure medication. The Court is hesitant to direct Defendants to provide a medication—Ultram—that was prescribed prior to these changes in Plaintiff's health.

Therefore, the Court will order Defendants to schedule Plaintiff to see Dr. Page on an immediate basis, so that Dr. Page can assess Plaintiff's condition and current medications and determine whether Ultram or an alternate medication is appropriate. Defendants will also be ordered to provide the treatment and medication prescribed by Dr. Page.

In light of Plaintiff's averments that he has begun to develop a bulge or deformity in his neck/upper back, the Court will also direct Defendants to schedule Plaintiff to see Dr. Waldrip or other orthopedic specialist as soon as possible.

The Court recognizes that for security reasons, it is not appropriate for Defendants to divulge the exact date and time of Plaintiff's scheduled appointments. But Defendants will be directed to file a Notice with the Court indicating the week in which Plaintiff's pain management specialist and orthopedic specialist appointments are scheduled.

**IT IS ORDERED:**

(1) Plaintiff's Motion for Preliminary Injunction (Doc. 73) is **granted in part** as follows:

    (a) Defendant Corizon must promptly schedule Plaintiff to see pain management specialist Brian Page on an urgent basis. As soon as this appointment is made, Defendant Corizon must file a Notice with the Court indicating the week in which Plaintiff is scheduled to see Dr. Page.

    (b) Defendant Corizon must provide the treatment and medication recommended and/or prescribed by Dr. Page, including any follow-up care.

    (c) Defendant Corizon must promptly schedule Plaintiff to see Dr. Waldrip or other orthopedic specialist. As soon as this appointment is made, Defendant Corizon must file a Notice with the Court indicating the week in which Plaintiff is scheduled to see the orthopedic specialist.

(2) This relief is narrowly drawn, extends no further than necessary to correct the harm, and is the least intrusive means necessary to correct the harm. *See* 18 U.S.C. § 3626(a)(2).

(3) Plaintiff is not required to post bond.

Dated this 8th day of May, 2018.

David G. Campbell
United States District Judge